IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
APR - 3 2008
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MP LEASING CORP.,
AMERICAN CANADIAN CARIBBEAN LINE, INC.,

    Plaintiffs,

v.                                           Civil Action No. 2:07cv273

COLONNA'S SHIPYARD, INC.,

    Defendant.

## *MEMORANDUM OPINION AND ORDER*

This matter is before the Court on Defendant, Colonna's Shipyard, Inc.'s ("Defendant") motion to dismiss counts II and III of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having carefully reviewed the parties' pleadings and conducted a hearing on the motion, the Court finds this matter ripe for judicial determination. For the reasons below, Defendant's motion to dismiss count II is **DENIED** and the motion to dismiss count III is **DENIED** in part and **GRANTED** in part.

### I. FACTUAL AND PROCEDURAL HISTORY

On November 18, 2005, Defendant and Plaintiff, American Canadian Caribbean Line, Inc. ("ACCL") entered into a maritime contract wherein Defendant agreed to haul ACCL's Vessel, called the M/V Grande Mariner ("The Vessel"), perform certain hull repairs, and launch the Vessel for re-delivery at its Norfolk, Virginia maritime railway facility. (Compl., ¶10.) Plaintiff, MP Leasing Corp. ("MPLC"), is a corporation duly organized and existing under the

laws of the State of Rhode Island, with a principal place of business at Warren, Rhode Island and was and now is the owner of the Vessel. ACCL is also a corporation duly organized and existing under the laws of the State of Rhode Island, with a principal place of business at Warren, Rhode Island[1]. Defendant is a domestic corporation with a principal place of business at 400 East Indian River Road, Norfolk, Virginia. The Court has jurisdiction over this matter under admiralty and maritime law arising under 28 U.S.C. §1333 as well as under 28 U.S.C. §1332.

On November 30, 2005, ACCL delivered the Vessel to Defendant at its marine railway facility at which time Defendant assumed exclusive care, custody, control, and possession of the Vessel. (Compl., ¶12.) Defendant agreed that it would return the Vessel to ACCL on or about December 5, 2005. (Compl., ¶13.) From November 30, 2005 to December 5, 2005, Defendant performed the agreed upon maintenance and repair services. (Compl., ¶14.) On December 5, 2005, while the Vessel was being lowered into the water and redelivered, the cradle carrying the Vessel derailed and caused the Vessel to become stranded on the railway. As a result of the derailment, the Vessel suffered physical damage and could not be refloated and re-delivered to ACCL. (Compl., ¶¶15;16.) After the incident, Defendant began taking steps to re-float the vessel but ceased its efforts after its insurance company advised that there would be no coverage for the loss. (Compl., ¶17.)

On June 12, 2007, Plaintiffs instituted this action against Defendant, alleging repudiation/breach of contract, breach of the implied warranty of workmanlike performance, negligence/gross negligence, and bailment. Each cause of action arises from the ship repair contract entered into between the parties and each seeks damages in the amount of $100,000.

---

[1] ACCL and MPLC will be collectively referred to as Plaintiffs.

2

(Def.'s Br. in Supp. of Mot. to Dismiss). On June 17, 2007, Defendant filed an answer and counterclaim. On June 17, 2007, Defendant also filed a motion to dismiss counts II and III of the complaint and memorandum in support. On August 10, 2007, Plaintiffs filed a memorandum in opposition to Defendant's motion to dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference, *see Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985), and courts will favorably construe the allegations of the complainant. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overturned on other grounds. In addition, courts must assume that the facts alleged in the plaintiff's complaint are true. *See McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). A court will only grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Johnson v. Mueller*, 415 F.2d 354, 354 (4th Cir. 1969).

## III. DISCUSSION

### A. Count II: Implied Warranty of Workmanlike Performance

Defendant moves to dismiss count II of the complaint that alleges breach of warranty of workmanlike performance, asserting that the contract entered into between the parties effectively disclaims any and all warranties of workmanlike service. (Def.'s Br. in Supp. of Mot. to Dismiss) Plaintiffs argue that count II should not be dismissed because the implied warranty for workman-

like performance was not clearly disclaimed or waived. (Pl.'s Mem. in Opp. to Def. Mot. To Dismiss). Under the "terms and conditions" of the contract, the parties agreed to the following clause:

> The Shipyard does not agree to the accident, indemnity and insurance provisions, if any, contained in your invitation or specifications, relating to liability for death or personnel injury, and in such cases we accept only liability as is imposed upon us by law. In no event shall we be liable for the cost of defense, including attorney's fees, of any action whether commenced by our employees, subcontractors or others against the vessel, its owners, agents, charterers, or underwriters. The foregoing is in lieu of all warranties and liabilities, whether statutory, express or implied, including but not limited to, warranties of merchantability, fitness for a particular purpose and workman-like service. Different or more extensive liability will be accepted if an agreement in writing stating the nature and extent thereof is entered into before the vessel enters our yard or work is commenced, whichever first occurs, and if the price is adjusted to include the cost of appropriate additional insurance.

(Terms and Conditions, ¶1). Generally, admiralty law applies to all maritime contracts. A contract is maritime if it relates "to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." *Todd Marine Enterprises, Inc. v. Carter Machinery Co., Inc.*, 898 F. Supp. 341 (E.D.Va. 1995). Contracts to repair or perform extensive reconstruction of a ship fall within admiralty jurisdiction. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961); *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99 (1922). The essence of the contract at issue was to perform maintenance and repair services on the Vessel. This Court finds that the contract at issue was a maritime contract and therefore admiralty law governs.

The warranty imposed on a contractor in admiralty is to effect ship repairs in a workmanlike manner. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 133 (1956); *American Export Lines v. Norfolk Shipbuilding & Drydock Corp.*, 336 F.2d 525 (4th Cir. 1964); *Tebbs v. Baker-Whiteley Towing Co.*, 407 F.2d 1055, 1058-1059 (4th Cir. 1969); *Little*

4

*Beaver Enterprises v. Humphreys Railways, Inc.*, 719 F.2d 75, 77 (4th Cir. 1983). Although the warranty of workmanlike service does not make the repairer a guarantor of results, the warranty is very broad and has been applied to find fault where repair jobs are improperly performed. *See Little Beaver Enterprises*, 719 F.2d at 78. Limitations on this warranty "are not looked upon with favor and are strictly construed." *Id.* (quoting *Elgie & Co. v. Steamship "S.A. Nederburg,"* 599 F.2d 1177, 1183 (2d Cir. 1979)). Clauses that purport to limit a party's legal responsibility are strictly construed and to be given effect must clearly express the intent of all parties whose liability is altered by the agreement. *Nathaniel Shipping, Inc. v. General Elec. Co.*, 920 F.2d 1256 (5th Cir. 1991).

Although Defendant argues the paragraph cited from the contract is an express disclaimer for any liability based on the warranty of workmanlike service, the specific language suggests otherwise. The language used in a contract must be given its ordinary meaning. *Appalachian Power Co. v. Greater Lynchburg Transit Co.*, 374 S.E.2d 10, 12 (Va. 1988). If the ordinary meaning of a contract is plain, the contract must be given effect according to the plain meaning of the words used by the parties to express their agreement. *Id.* In the clause in question, parties specifically stated,

> The Shipyard does not agree to the accident, indemnity and insurance provisions, if any, contained in your invitation or specifications, relating to liability for death or personnel injury, and in such cases we accept only liability as is imposed upon us by law.

(Terms and Conditions, ¶1). When the parties stated "the foregoing is in lieu of all warranties and liabilities..." the parties referenced the immediate language that preceded it, which specifically referred to "accident, indemnity, and insurance provisions" and "any action...against the vessel, its owners, agents, charterers, or underwriters." Based on the plain meaning of the words used by

the parties, the subject matter of the clause in question is indemnity and this language does not specifically disclaim "any liability based on the warranty of workmanlike service" as Defendant asserts. In *Little Beaver Enterprises,* the Court did not decide whether contract language similar to the language in question[2] constituted an effective disclaimer. *See Little Beaver Enterprises,* 719 F.2d at 76. However, the language here can clearly be distinguished from the language found to be an effective disclaimer in *Little Beaver Enterprises.* There, the contract specifically stated,

> in case of defective workmanship or material, our liability is limited strictly to the cost of repair, correction or replacement thereof...We shall not be liable for any consequential damages whatsoever, including but not limited to, lost revenue, crew wages, salvage or tug expense, delay or loss of use.

*Little Beaver Enterprises,* 719 F.2d at 76. The United States Appeals Court for the Fourth Circuit determined that the quoted language was an express warranty against defective workmanship. This language closely resembles the language found in another provision of the contract in question, which states,

> In case of defective workmanship of material furnished, whether latent or otherwise, our liability is limited strictly to the cost of repair, correction or replacement thereof, and only where such defects are reported to us in writing within thirty (30) days after completion of the work. If such a written report is not made, and litigation not commenced within one year after work has ceased, for any reason, or has completed, we shall be discharged from all liability from defective workmanship and material.

(Terms and Conditions, ¶2). Contract terms must be construed in a way which gives effect to each part of the contract and does not leave a portion of the contract meaningless. *Goodman v. Resolution Trust Corp.,* 7 F.3d 1123, 1127 (4th Cir. 1993). Defendant's interpretation of the indemnity provision is patently inconsistent with the above provision and would render it

---

[2] The provision stated, "The foregoing is in lieu of all warranties and liabilities, whether statutory, expressed or implied, including, but not limited to, warranties of merchantability, fitness for a particular purpose and workmanlike service." *Little Beaver Enterprises,* 719 F.2d at 78.

6

meaningless. When viewing the contract as a whole, the Court finds that the plain language here is insufficient to disclaim all liability under the implied warranty of workmanlike service.

### B. Count III: Negligence/Gross Negligence

Defendant has also moved to dismiss Plaintiff's claim for negligence and gross negligence, asserting that this claim is barred as a matter of law because there cannot be recovery based on breach of contract and tort law. (Def.'s Br. in Supp. of Mot. to Dismiss, 4). Plaintiff disputes this claim, arguing that the case at bar is governed by general maritime law, which permits recovery based on tort liability as well as breach of contract. (Pl. Mem. in Opp. to Def's Mot. to Dismiss, 5-7).

The parties' claims must be addressed under federal maritime law because "admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986). Under maritime law, a shipowner has a cause of action whether he sues in contract for its breach by a party with whom there was a contract for repairs of the vessel, or in tort for the negligent performance of the maritime contract. *Newport News Shipbuilding & Drydock Company v. United States*, 226 F.2d 137 (4th Cir. 1955); *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 412 (5th Cir. 1982); *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967). In *Newport News Shipbuilding & Drydock Company*, an action by a vessel owner against a shipyard for cargo damages, the United States Appeals Court for the Fourth Circuit stated, "we think it perfectly clear on these facts that the trial judge correctly held, not only that there was *breach of contract* with respect to the failure to blank off the waste pipe, but also that this constituted *negligence* which was the direct cause of the damage to cargo and the loss for which

7

plaintiff is seeking indemnity"(emphasis added). 226 F.2d at 141. The Court added, "We think, too, that the trial judge correctly held the damage which resulted from the negligence to be direct and not consequential, and this *whether the claim be regarded in contract or in tort.*"(emphasis added). 226 F.2d at 141.

A ship repairer may be liable in contract for a breach of his expressly assumed obligations or for a breach of an implied warranty of workmanlike performance that attaches to admiralty contracts. *La Esperanza De P.R., Inc. v. Perez Y Cia. De Puerto Rico, Inc.,* 124 F.3d 10, 16 (1st Cir. 1997). A ship owner may also be liable under a tort theory of negligence, which relies on principles of maritime negligence rather than those of common law. *See Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 408-09 (1953); *see also, Alcoa S. S. Co. v. Charles Ferran & Co.,* 383 F.2d 46 (5th Cir. 1967); *Southport Transit Co. v. Avondale Marine Ways, Inc.,* 234 F.2d 947, 955 (5th Cir. 1956). Defendant cites to cases that are governed by the common law of Virginia rather than by maritime law. *See e.g. Virginia Timberline, LLC v. Land Management Group, Inc.* 471 F.Supp.2d 630, 632 (E.D.Va. 2006); *Maersk Line, Ltd. v. Care Nadm, Inc.,* 271 F.Supp.2d 818 (E.D.Va. 2003). Defendant also cites cases that do not involve a relationship between a vessel owner and vessel repairer. Because this is a case involving the repair of a vessel, maritime law governs and the Court will not dismiss the negligence claim.

Defendant also argues that the claim for gross negligence should be dismissed because Plaintiffs have failed to plead facts to state a claim for gross negligence. Gross negligence, which will invalidate an exemption from liability has been defined as "harm wilfully inflicted or caused by gross or wanton negligence." *Todd Shipyards Corp.,* 674 F.2d at 411. Plaintiffs have stipulated that they have failed to plead sufficient facts to state a claim. Accordingly, Defendant's motion to

dismiss count III is granted in part on the claim of gross negligence.

## IV. CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss count II is **DENIED** and motion to dismiss count III is **GRANTED** in part on the claim of gross negligence.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 3, 2008

Raymond A. Jackson
United States District Judge